O

# United States District Court
# Central District of California

| | |
|---|---|
| SHAHLA KEYVANFAR MELAMED,<br><br>Plaintiffs,<br><br>v.<br><br>VIRGINIA HEROLD; CALIFORNIA BOARD OF PHARMACY; and DOES 1-50,<br><br>Defendants. | Case № 2:15-cv-05524-ODW (JEM)<br><br>**ORDER DENYING PLAINTIFF'S EX PARTE APPLICATION FOR A TEMPORARY RESTRAINING ORDER [22]** |

## I. INTRODUCTION

On November 3, 2015, Plaintiff Shahla Keyvanfar Melamed applied ex parte for a temporary restraining order enjoining Defendants Virginia Herold and California Board of Pharmacy ("Board") from revoking her pharmacist license. Defendants timely opposed. For the reasons discussed below, the Court **DENIES** Melamed's application. (ECF No. 22.)

## II. FACTUAL BACKGROUND

This action arises from an administrative proceeding instituted by the Board against Melamud and Roxsan Pharmacy, Inc. ("Roxsan"), a pharmacy that Melamud owned at the time. In February 2014, the Board filed an Accusation against Roxsan and Melamed, which the Board subsequently amended in April 2015. In those

Accusations, the Board alleged that Roxsan and Melamed: (1) stored expired ingredients for use in compounding drugs; (2) compounded and dispensed 452 misbranded prescriptions containing drugs not approved for use in the United States; (3) shipped thousands of prescriptions, including controlled substances, to states where the pharmacy was not licensed to dispense; (4) failed to end-test compounded drugs for sterility and bacterial toxins; (5) falsified a controlled substance inventory; and (6) handwrote false information on a physician's order during a Board inspection. (Decl. Melamed, Ex. A.)

In July 2014, Melamed proposed to settle the Accusation by selling Roxsan to Parallax Health Services, Inc. ("Parallax"), after which Melamed would voluntarily surrender her license to the Board. (First Am. Compl. (FAC) ¶ 30.) The Board appeared to generally agree with the proposal, although there was a dispute over exactly when Melamed would surrender her license. (*Id.* ¶ 32.)

A few months later, Parallax filed a permit application in anticipation of purchasing Roxsan. (*Id.* ¶ 34.) However, the Board informed Melamed and Parallax that it would not approve Parallax's application until Roxsan's current permit and Melamed's license were surrendered. (*Id.* ¶ 36.) This left the parties in a pickle—Parallax did not want to go through with the sale unless they were assured that their permit would be approved, but the Board would not approve the permit until Roxsan's current permit and Melamed's license were surrendered, which Melamed did not want to do until *after* the sale was consummated. In February 2015, the Board denied Parallax's permit application "based upon the pending administrative case against Roxsan Pharmacy, Inc." (*Id.* ¶ 40.)

Over the next five months, Melamed alleges that Defendants engaged in conduct intended to delay resolution of the Accusation and prevent the sale of Roxsan to Parallax. (*Id.* ¶¶ 44–75.) On July 21, 2015, Melamed filed this action, alleging that Defendants violated her substantive due process rights, procedural due process rights, and her rights under the Equal Protection Clause. (ECF No. 1.) This apparently

1  prompted the Board to resolve the Accusation against Melamed.  On July 29, 2015,
2  Roxsan and Melamed executed a settlement agreement, wherein they agreed to
3  (among other things) surrender their respective pharmacy permit and license on
4  November 6, 2015.  (Decl. Melamed, Ex. A.)  The next day, the Board approved
5  Parallax's permit application.  (FAC ¶ 77.)

6  However, by this point, Parallax was having difficulty securing the funds
7  needed to purchase Roxsan.  (*Id.* ¶ 80.)  This forced Melamed to forgo a substantial
8  upfront payment for periodic payments made from the profits that Roxsan would
9  generate under Parallax's management.  (*Id.* ¶¶ 80–81.)  However, Parallax was
10 apparently also unable to secure the funding needed to run the pharmacy, which of
11 course would negatively affect Parallax's ability to pay Melamed from the pharmacy's
12 profits.  (*Id.* ¶ 82.)  On October 15, 2015, Melamed filed a lawsuit against Parallax in
13 the Los Angeles Superior Court seeking to rescind the sale of the pharmacy, alleging
14 that Parallax misrepresented (among other things) their ability to secure adequate
15 funding to either purchase Roxsan outright or run the pharmacy after purchasing it.
16 (Req. for Judicial Notice, Ex. A.)

17 On October 6, 2015, Melamed filed a First Amended Complaint in this action,
18 which seeks to enjoin Defendants from taking her license.  (*Id.* ¶¶ 124–33.)  On
19 November 3, 2015, Melamed applied ex parte for a temporary restraining order
20 enjoining the Board from forcing her to surrender her pharmacy license.  (ECF No.
21 22.)  Defendants timely opposed.  (ECF No. 23.)  Melamed's application is now
22 before the Court for consideration.

### III.   LEGAL STANDARD

24 "The standard for issuing a temporary restraining order is identical to the
25 standard for issuing a preliminary injunction." *Lockheed Missile & Space Co. v.*
26 *Hughes Aircraft Co.*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995).  A court may only
27 grant such relief "upon a clear showing that the plaintiff is entitled to such relief."
28 *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).  To prevail, the moving

1 party must show: (1) a likelihood of success on the merits; (2) a likelihood that the
2 moving party will suffer irreparable harm absent preliminary injunctive relief; (3) that
3 the balance of equities tips in the moving party's favor; and (4) that preliminary
4 injunctive relief is in the public interest (the "*Winter* factors"). *Id.* at 20. "Under
5 *Winter*, plaintiffs must establish that irreparable harm is *likely*, not just possible, in
6 order to obtain a preliminary injunction." *Alliance for the Wild Rockies v. Cottrell*,
7 632 F.3d 1127, 1132 (9th Cir. 2011) (original emphasis). In the Ninth Circuit,
8 "'serious questions going to the merits' and a hardship balance that tips sharply
9 toward the plaintiff can [also] support issuance of an injunction, assuming the other
10 two elements of the *Winter* test are also met." *Id.* at 1132, 1135 (holding that the
11 "sliding scale" test remains viable "so long as the plaintiff also shows that there is a
12 likelihood of irreparable injury and that the injunction is in the public interest").

## IV. DISCUSSION

14 The parties tussle over whether Melamed has satisfied the *Winter* factors.
15 Melamed argues that she has shown a likelihood of success on her constitutional
16 claims, that she would be irreparably harmed if her license was revoked due to the
17 onerous license reinstatement process, and that the equities favor her because of
18 Defendants' extreme delay in resolving the Accusation against her. (ECF No. 22.)
19 Defendants argue that several affirmative defenses prevent Melamed from prevailing
20 in this action, and that the allegations against Melamed show that the equities and
21 public interest weighs against her. (ECF No. 23.) The Court agrees with Defendants
22 that Melamed has not satisfied the *Winter* factors.

**A.    Likelihood of Success on the Merits**

24 There is a laundry list of reasons why Melamed is unlikely to succeed on the
25 merits of her claims. Thus, the Court finds that Melamed has not satisfied this prong
26 of the *Winter* test.
27 First, in order to proceed against Herold under § 1983, Melamed must show that
28 Herold was personally involved in the conduct that led to the constitutional

4

1 deprivation. *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). Moreover, "[a] plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights." *Id.* The allegations against Herold are limited to a few instances where she declined to return requests for status updates from Melamed's attorney, and one instance where she referred Melamed's attorney to other persons in her office. This does not appear to amount to a deprivation of either Due Process or Equal Protection. The remaining allegations against Herold are boilerplate accusations that she oversaw and directed the scheme to delay resolution of the Accusation and thwart the sale of Roxsan to Parallax. However, Herold cannot be held responsible for a subordinates' allegedly unconstitutional conduct simply because she is the "executive officer" of the Board. *See, e.g.*, *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (police chief not liable under § 1983 where he was not personally involved in the incident).

Second, as Defendants point out, "agency officials performing certain functions analogous to those of a prosecutor should be able to claim absolute immunity with respect to such acts." *Butz v. Economou*, 438 U.S. 478, 515 (1978). The conduct alleged here—Herold's delay in resolving the Accusation, hindering the sale of Roxsan, and procuring the settlement under duress—appears to fall squarely within this immunity.

Third, the Board is an arm of the State of California, and thus is not a "person" subject to suit under § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983.").

Fourth, there is at least a substantial question over whether or not the Court can grant relief to Melamed under the *Younger* abstention doctrine. "'*Younger* abstention is required if the state proceedings are (1) ongoing, (2) implicate important state interests, and (3) provide the plaintiff an adequate opportunity to litigate federal claims.' When the case is one in which the *Younger* doctrine applies, the case must be

dismissed." *H.C. ex rel. Gordon v. Koppel*, 203 F.3d 610, 613 (9th Cir. 2000) (citation omitted). Here, Melamed still has a request for reconsideration pending before the Board, and thus it would appear that the administrative proceeding against her is still ongoing. The proceeding also implicates the important state interest of regulating the dispensation of prescription medication. Finally, Melamed appears to have an adequate opportunity to litigate her federal claims through the writ petition process. Cal. Code Civ. Proc. § 1094.5.

Fifth, Melamed has not shown any likelihood of prevailing on her parallel state lawsuit against Parallax to rescind the purchase agreement. As discussed more fully below, Melamed is not currently conducting any business that requires her to have a pharmacy license, and the only reason she claims she needs a pharmacy license is in the event that the state court grants rescission of sale of Roxsan to Parallax. Thus, without any showing that she is likely to prevail on *that* claim, there is no reason to enjoin Defendants from taking her license.

Sixth, notwithstanding all of the foregoing affirmative defenses, the Court is skeptical that Melamed could make even a prima facie case on her constitutional claims. The constitutional deprivations alleged all go to the Board's delay in resolving the Accusation and approving Parallax's permit application; they do not go to the settlement reached between the Board and Melamed wherein she agreed to surrender her license. While the two issues have some factual overlap, any theories of liability or recovery for each would be distinct. For example, how does Melamed have a substantive due process right to her license? How was she deprived of equal protection when she agreed to surrender her license? And while Melamed does indeed have a right to a fair hearing on the Accusations against her, she—like every litigant or criminal defendant—can waive those rights by reaching a settlement with the opposing side.

Rather, Melamed's claim is more appropriately one for rescission of the settlement with the Board based on economic duress, not for a violation of her

constitutional rights. But even then, the Court also sees no substantial evidence at this point that Melamed was unduly bullied into surrendering her license. Every person facing an administrative investigation is under some amount of economic pressure, and every settlement in those circumstances would be all but unenforceable if that pressure was a basis on which to rescind the agreement. She was also represented by and given the advice of counsel during the entire proceeding, including with respect to the signing of the settlement. This seems more like a case of buyer's remorse. Suffice to say, Melamed has clearly not shown a likelihood of success on the merits.

**B.     Irreparable Harm**

Melamed has also not shown any likelihood of suffering irreparable harm absent an injunction. She concedes that she "is not acting as a pharmacist or in any form of a regulated capacity," and that the only reason she would need her license is if she prevails in her lawsuit to rescind the sale of her pharmacy to Parallax. (App. at 9–10.) As noted above, Melamed would therefore need to show a likelihood of prevailing on her lawsuit against Parallax for rescission. Melamed does not do this, and thus there is no reason why she needs her license right now. Moreover, while she claims that the license reinstatement process is onerous, nowhere does she claim that it is *impossible* for it to be reinstated, and thus the harm facing her is clearly not irreparable. This factor is also not satisfied.

**C.     Equities**

The Court also finds that the equities tip in favor of Defendants. In the Stipulated Surrender, Melamed essentially concedes the factual basis of the Accusation, which contains some shocking allegations. (Decl. Melamed, Ex. A.) Nonetheless, the Board allowed Melamed to sell her pharmacy and simply surrender her license, which is not a harsh punishment at all given her alleged conduct. Now, Melamed is trying to completely undo her deal with the Board—she wants to retain her license, rescind the sale of Roxsan to Parallax (as opposed to seeking damages), and apparently continue running the pharmacy. Allowing Melamed to do this would

not only be inequitable, but potentially harmful to the public.

This is not to say that Defendants are without blame. Defendants delayed resolution of the Accusation to the point where Melamed's sale of the pharmacy was severely jeopardized, despite ample warning from Melamed of the severe economic problems that the delay was creating. If Defendants did not agree with the proposed plan, they should have rejected it outright instead of stringing Melamed along and leading her to think that the sale could ultimately go through as proposed.

Given that three of the four *Winter* factors weigh against issuing a TRO, the Court finds it unnecessary to address the public interest prong.

## V. CONCLUSION

For the reasons discussed above, the Court **DENIES** Melamed's Ex Parte Application for a Temporary Restraining Order. (ECF No. 22.)

**IT IS SO ORDERED.**

November 6, 2015

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**